# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PHILADELPHIA AMERICAN LIFE
INSURANCE COMPANY,

                **Plaintiff,**

-vs-                                       **Case No.  6:07-cv-1743-Orl-22DAB**

CHARLES BUCKLES,

                **Defendant.**

_____

# ORDER

## I. Introduction

This cause comes before the Court on a motion to dismiss by  Plaintiff Philadelphia American Life Insurance Company ("Philadelphia"). (Doc. No. 37.) Philadelphia moves to dismiss the declaratory relief, breach of contract, and fraud claims presented in Defendant Charles Buckles' ("Buckles") Amended Counterclaim and Third-Party Complaint. (Doc. No. 37.) Central States Health & Life Company of Omaha ("CSO") joins in Philadelphia's motion to dismiss. (Doc. No. 40.)

Upon carefully considering the parties' submissions, the Court determines that Counts I and II for declaratory judgment and Count III for breach of contract survive dismissal. However, the fraud claim alleged in Count IV must be dismissed.

A sufficient case or controversy exists to assert jurisdiction over the declaratory judgment claims contained in Counts I and II of Buckles' Amended Counterclaim and Third-Party Complaint. Buckles alleges sufficient injury to establish standing to bring these declaratory judgment claims.  In addition, Buckles adequately alleges the necessary elements of breach and damages for the breach of

contract claim in Count III of his Amended Counterclaim and Third-Party Complaint. However, Buckles' fraud claim in Count IV is due to be dismissed on economic loss rule grounds.

## II. Background

On November 12, 1996, Charles Buckles purchased a Cancer and Specified Disease Policy ("the Policy") Guaranteed Renewable for Life from CSO, effective January 1,1997. (Def.'s Am. Countercl. 2, Doc. No. 29.) Buckles has continuously renewed the Policy. (*Id.* at 2.)

In January 1999, Buckles was diagnosed with myasthenia gravis, a condition covered under the Policy. (*Id.* at 2-3.) Starting in February 1999, Buckles submitted treatment claims under the Policy on CSO's Cancer, Specified Disease Claim Form ("Claim Form"). (*Id.* at 3.) Continuing through the date of this filing, Florida Hospital has issued billing statements to Buckles for his disease treatments. (*Id.*) Buckles submitted all Florida Hospital billing statements to CSO. (*Id.*) For more than seven years, in response to each claim submitted, Buckles received an Explanation of Benefits from CSO along with payment for the claims submitted, reflected in the "benefit amount" column. (*Id.* at 4.) In addition to examining Buckles' claims as they were submitted, CSO audited the claims on multiple occasions. (*Id.*)

Around November 2005, Philadelphia began administering CSO's claims and Buckles received an Explanation of Benefits bearing Philadelphia's name and a check with CSO's name on it. (*Id.*) Beginning in early 2006, the Explanations of Benefits and the checks Buckles received both bore Philadelphia's name. (*Id.*) In a letter dated August 2006, Philadelphia provided notice to Buckles that the Policy obligations had been transferred from CSO to Philadelphia. (*Id.* at 4-5.) The letter included a Notice of Transfer that gave Buckles the option to reject the transfer through a response

card. (*Id.* at 5.) Buckles timely signed and returned the enclosed response card and indicated his rejection of CSO's proposed transfer of the Policy. (*Id.*) The response card was received and accepted by Philadelphia on September 22, 2006. (*Id.*) In conjunction with the response card procedure, CSO indicated that it would provide a "method" for an insured to keep the Policy with CSO while making premium payments to Philadelphia. (*Id.*) After Philadelphia began serving in its administrative role for CSO, Buckles continued to submit his claims to CSO and receive claims payments from Philadelphia. (*Id.* at 5-6.)

On November 1, 2007, Philadelphia filed a lawsuit against Buckles seeking declaratory judgment and asserting a claim for unjust enrichment based on the Policy. (Pl.'s Compl., Doc. No. 1.) In substance, Philadelphia contends that Buckles was overpaid for his treatment costs in the amount of $3,900,000. (Pl.'s Compl. 7, Doc. No. 1.) In Philadelphia's complaint, Philadelphia requests, "On Count I, an order declaring that 'actual charge' means the actual amount accepted by a health care provider as full satisfaction of the insured's obligations for treatment covered by the Policy; and (ii) 'actual charge' does not include any amount which is not required to be paid by the insured or any other party on the insured's behalf to the provider of treatment covered by the Policy." (Pl.'s Compl. 8, Doc. No. 1.) Philadelphia also requests, "On Count II, an order requiring Buckles to repay the amount, to be determined at trial, unjustly retained by him for the claims paid by Philadelphia American and CSO that are not covered by the Policy. . . ." (Pl.'s Compl. 8, Doc. No. 1.)

Buckles filed a counterclaim against Philadelphia and a third-party complaint against CSO. on February 11, 2008. (Def.'s Countercl., Doc. No. 26; Def.'s Am. Countercl., Doc. No. 29.) Counts

-3-

I and II of Buckles' claims request declaratory relief pursuant to 28 U.S.C.A. §§ 2201-2202 (2008) and Fed. R. Civ. P. 57. Count III asserts a claim for breach of contract. Count IV asserts a fraud claim.

Philadelphia filed a motion to dismiss Buckles' Amended Counterclaim and Third-Party Complaint on February 25, 2008. (Pl.'s Mot. Dismiss, Doc. No. 37.)  CSO then filed its motion to dismiss Buckles' Amended Counterclaim and Third-Party Complaint on March 19, 2008 (Third-Party Def.'s Mot. Dismiss, Doc. No. 40), adopting Philadelphia's memorandum of law in its motion.

### III. The Parties' Contentions

Philadelphia and CSO assert that Buckles' declaratory relief claims should be dismissed for lack of jurisdiction and lack of standing, Buckles' breach of contract claim should be dismissed for failure to establish breach or damages, and Buckles' fraud claim should be dismissed for failure to state a claim and failure to plead fraud with particularity. Additionally, Philadelphia and CSO contend that Buckles' fraud claim is barred by the economic loss rule.

Buckles argues that his declaratory judgment claims establish an actual controversy sufficient to invoke the Court's jurisdiction and he alleges sufficient injury to establish standing. Buckles also argues that his declaratory judgment claims serve a useful purpose and are not redundant. Buckles further states that his breach of contract claim alleges sufficient facts to establish that a material breach occurred because of the Policy transfer. Buckles asserts that he has established damages from the breach sufficient for his claim. Finally, Buckles argues that he states a claim for fraud and alleges fraud with the requisite particularity. Further, Buckles argues that he alleges fraudulent conduct that is separate and distinct from CSO's breach of contract, so the fraud claim is not barred by the economic loss rule.

## IV. Analysis

### A. Jurisdiction over Declaratory Judgment Claims

Absent a justiciable case or controversy, the Court lacks jurisdiction and claims for declaratory relief must be dismissed. *Atlanta Gas Light Co.v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414-15 (11th Cir. 1995). In order for the Court to have jurisdiction, claims for declaratory judgment must pertain to an actual controversy between parties with adverse interests with respect to which the declaration is sought. *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991).

Exercise of jurisdiction under the Declaratory Judgment Act is discretionary, even where a valid case or controversy exists. "The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.118, 127 S. Ct. 764, 776 (2007) (emphasis in original); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). A declaratory judgment should be granted "(1) when the judgment will serve a *useful purpose* in clarifying and settling the legal relations at issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *DDFA of S. Fla., Inc. v. Dunkin' Donuts, Inc.*, No. 00-7455-CIV, 2002 WL 1187207, at **4-5 (S.D. Fla. May 22, 2002) (emphasis in original).

This Court determines that it should exercise jurisdiction over Buckles' declaratory judgment claims. An actual controversy exists between Philadelphia and Buckles as to the exact obligations to pay claims under the Policy. Philadelphia's request for declaratory judgment asks for decision on the meaning of "actual charges" in the Policy. Buckles' request for declaratory relief seeks resolution of what provisions of the Policy govern payments to Buckles. Buckles also requests resolution of whether CSO's prior payment activity binds Philadelphia to pay Buckles the higher amounts.

Buckles' declaratory relief claims are not similar enough to Philadelphia's request for declaratory relief to achieve the level of redundancy that would support dismissal of Buckles' declaratory relief claim. *See Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158, 1162 (E.D. Pa. 1978). The Court has jurisdiction over the declaratory relief claims in Counts I and II of Buckles' Amended Counterclaim and Third-Party Complaint.

### B.  Standing for Declaratory Judgment Claims

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999)  "[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Com'n*,--S.Ct.--, No. 07-320, 2008 WL 2520527, at *6 ( June 26, 2008) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Philadelphia and CSO claim that Buckles does not have standing to bring his claims because the filing of a lawsuit itself is not sufficient injury to establish standing for tort claims.  While awaiting the Court's resolution of Philadelphia's complaint for declaratory relief,  Philadelphia has not reduced or discontinued the payments that Buckles previously received from CSO. However, if Philadelphia prevails in its declaratory judgment action, Buckles will potentially incur injury by having to pay back the overpayments. Also, resolution of Philadelphia's request for declaratory judgment regarding the meaning of "actual charge" may result in decreased payments to Buckles.

-6-

Such possible financial injury is adequate to satisfy the standing requirement for declaratory judgment claims.  Based on these allegations, Buckles has suffered or will suffer sufficient injury to establish standing for Counts I and II. The Court finds that Buckles has standing to bring his declaratory judgment claims.

### C. Breach of Contract

A properly plead complaint or counterclaim must present a short and plain statement of entitlement to relief. Fed. R. Civ. P. 8(a)(2). A complaint or counterclaim that fails to state a claim upon which relief can be granted should be dismissed. Fed. R. Civ. P. 12(b)(6). In order for a claim to survive a motion to dismiss for failure to state a claim, a claim must present factual allegations that are properly plead and sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). In deciding whether to grant a motion to dismiss, the Court has to find some recognizable legal theory upon which relief might be granted. *Id.* at 1965. On a motion to dismiss for failure to state a claim, the allegations in the complaint are to be accepted as true. *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000). To properly plead a breach of contract claim, the claimant must allege the existence of a valid contract, material breach, and damages resulting from the breach. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1365 (M.D.Fla. 2007); *see also Abruzzo.*v. *Haller*, 603 So. 2d 1338, 1339-40 (Fla. 1st DCA 1992).

Philadelphia and CSO state that, because there are no express terms of the Policy that prohibit transfer of the Policy, Buckles cannot establish that a breach of contract occurred because of the Policy transfer. However, CSO and Philadelphia sent a notice to Buckles, the First Notice of Transfer,

that requested Buckles' consent as a precondition to the transfer of the Policy from CSO to Philadelphia. (Def.'s Am. Countercl. 5, Doc. No. 29.) Buckles expressly rejected consent to the Policy transfer in his response to the Notice, but CSO still transferred the Policy to Philadelphia. (*Id.*) Buckles' reliance on his express rejection of the Policy transfer supports Buckles' breach of contract claim.

In addition, even though Buckles does not give a detailed account of possible damages in his breach of contract claim, Philadelphia can deduce Buckles' claim for damages resulting from the alleged breach. Since the Policy transfer, Philadelphia has sued Buckles for declaratory judgment and unjust enrichment, claiming that the terms of coverage under the Policy differ from the coverage that CSO had been providing Buckles since inception of the Policy. Also, Buckles has incurred "significant" attorneys' fees and costs in order to defend against Philadelphia's suit. (Def.'s Resp. 13, Doc. No. 42.)

Buckles alleges breach of the "implied, express and/or incorporated terms of the policy" (Def.'s Resp. 11, Doc. No. 42). Buckles also alleges damages resulting from the breach. These allegations are sufficient to put Philadelphia and CSO on notice of the basis for Buckles' claims and the legal grounds upon which they rest. Buckles' breach of contract claim in Count III will not be dismissed for failure to establish breach or damages.

### D. Fraud

A cause of action for fraud can only be concurrent with a breach of contract claim when damages due to fraud are separate from damages resulting from any subsequent contractual breach. *Argonaut Dev. Group, Inc. SWH Funding Corp.*, 150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001). Under the economic loss rule, actions brought pursuant to contract law and actions brought in tort law are

to be kept separate and distinct in the courts' allowance of remedies for either action. *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1237-38 (N. D. Fla. 1991). "The economic loss rule is a judicially created doctrine which bars a tort action where a defendant has not committed a breach of duty apart from a breach of contract. The economic loss rule bars a plaintiff from bringing tort claims to recover purely economic damages from a breach of contract absent personal injury or property damages." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 906-907 (M.D. Fla. 2007).

Buckles alleges that fraudulent conduct occurred due to a material omission of fact in the First Notice of Transfer because the transfer notice does not reference the fact that the Policy transfer to Philadelphia would change the terms of coverage and payment of claims that CSO had previously provided to Buckles. (Def.'s Am. Countercl. 12-13, Doc. No. 29.) Buckles also claims that fraudulent conduct occurred due to an intentional material misrepresentation of fact in that CSO and Philadelphia informed Buckles that a method for paying premiums without accepting the Policy transfer would be provided, but such method was never provided. (*Id.* at 13.) Buckles' breach of contract claim also includes factual allegations about the First Notice of Transfer and Buckles' subsequent rejection of the Policy according to the method provided in the First Notice of Transfer. Buckles' breach of contract claim and Buckles' fraud claim concern identical factual allegations regarding the Policy transfer and subsequent First Notice of Transfer. In addition to relying on the same set of factual allegations, the alleged breach of duty for both claims is the transfer of the Policy without Buckles' necessary consent. Both claims also allege the same purported damages due to Philadelphia's subsequent suit against Buckles for declaratory judgment and unjust enrichment. Because of the interrelatedness of the two claims, it would be superfluous to allow Buckles to recover damages for both causes of action. The Court dismisses Count IV, Buckles' fraud claim, on economic loss rule

grounds. In light of this ruling, the Court need not address Philadelphia and CSO's other arguments directed at Buckles' fraud claim.

### V. Conclusion

Based on the foregoing, it is ORDERED as follows:

1. Plaintiff Philadelphia's Motion to Dismiss (Doc. No. 37), filed February 25, 2008, is DENIED in part and GRANTED in part. The motion is DENIED insofar as it seeks dismissal of Defendant Buckles' claims for declaratory relief contained in Counts I and II of Buckles' Amended Counterclaim and Third-Party Complaint (Doc. No. 29), filed February, 11, 2008. The motion is also DENIED insofar as it seeks dismissal of Defendant Buckles' claim for breach of contract in Count

III of Buckles' Amended Counterclaim and Third-Party Complaint. The motion is GRANTED insofar as it seeks dismissal of Defendant Buckles' fraud claim in Count IV of Buckles' Amended Counterclaim and Third-Party Complaint. That claim is DISMISSED, WITH PREJUDICE.

2. CSO's Motion to Dismiss (Doc. No. 40), filed March 19, 2008, is also DENIED in part and GRANTED in part, on the same basis as paragraph 1.

**DONE** and **ORDERED** in Orlando, Florida on July 11, 2008.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

-11-